## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

ANGEL COLON; AMNERIS DIAZ; RODNEY
SUMTER; JAY VASQUEZ; MARELYS MENENDEZ,
as Personal Representative of the Estate of GILBERTO
SILVA MENENDEZ; CARLOS MUNIZ-TORRES;
MIGUEL VEGA; JONATHAN GARCIA; ESTHER
PETERSON; MERCEDES MCQUERY; ROSALIA
RAMOS and STANLEY ALMODOVAR, as Co-
Personal Representatives of the Estate of STANLEY
ALMODOVAR III; ROLANDO RODRIGUEZ;
DEMITRIUS POLANCO; KADIM RAMOS;  JACOBI
CEBALLO; KALIESHA ANDINO; BETTIE LINDSEY;
SANDY ROBERTS; KASSANDRA MARQUEZ;
KATHERINE PATRICIO; SYLVIA SERRANO;
ROSAMARIA FEBO; NORMAN CASIANO-MOJICA;
FRANCHESSKA MERCADO; LEYDIANA
PUYARENA; FELIPE MARRERO SANCHEZ;
COREY RIVERA; ILKA REYES; JEANETTE
MCCOY; YVENS CARRENARD; EDWIN RIVERA
ALVAREZ; CESAR RODRIGUEZ; JESUS M.
SERRANO, as Personal Representative of the Estate of
XAVIER SERRANO ROSADO; MOHAMMED
ISLAM; DAVID JOURDENAIS; RONISE CELESTIN;
JOSEPH BRADLEY; BRIAN NUNEZ; CHRISTIAN
CARDONA; LIZMARYOOE FINOL VILORIA;
YORVIS ROMERO; ORLANDO TORRES; CARMEN
NILDA CAPO-QUINONES, as Personal Representative
of the Estate of LUIS OCASIO-CAPO; CARLOS
ANGLERO; DIGNA ROSA FERNANDEZ DE
CARRILLO, as Personal Representative of the Estate of
SIMON CARRILLO; DIMARIE RODRIGUEZ
LOZADA, as Personal Representative of the Estate of
JEAN CARLOS NIEVES; CARLEEN THOMAS;
WERNEL E. MARTINEZ; JOSE M. DIAZ UBILES;
and BERNADETTE CRUZ, as Personal Representative
of the Estate of PETER GONZALEZ-CRUZ; JUAN
JOSE CUFIÑO RODRIGUEZ; KEINON CARTER;
LEONEL MELENDEZ; JILLIAN AMADOR; ADRIAN
LOPEZ; JAVIER NAVA; and JOAQUIN ROJAS;

     Plaintiffs,

   v.

No.

**PLAINTIFFS DEMAND A JURY
TRIAL**

1

G4S PLC; G4S SECURE SOLUTIONS; and NOOR    )
SALMAN,                                      )
                                              )
                                              )
            Defendants.         )

## COMPLAINT AT LAW

1.    NOW  COME the Plaintiffs, AMNERIS DIAZ; RODNEY SUMTER; JAY VASQUEZ; MARELYS MENENDEZ, as Personal Representative of the Estate of GILBERTO SILVA MENENDEZ; CARLOS MUNIZ-TORRES; MIGUEL VEGA; JONATHAN GARCIA; ESTHER PETERSON; MERCEDES MCQUERY; ANGEL COLON; ROSALIA RAMOS and STANELY ALMODOVAR, as Co-Personal Representatives of the Estate of STANLEY ALMODOVAR III; ROLANDO RODRIGUEZ; DEMITRIUS POLANCO; KADIM RAMOS; JACOBI CEBALLO; KALIESHA ANDINO; BETTIE LINDSEY; SANDY ROBERTS; KASSANDRA MARQUEZ; KATHERINE PATRICIO; SYLVIA SERRANO; ROSAMARIA FEBO; NORMAN CASIANO-MOJICA; FRANCHESSKA MERCADO; LEYDIANA PUYARENA; FELIPE MARRERO SANCHEZ; COREY RIVERA; ILKA REYES; JEANETTE MCCOY; YVENS CARRENARD; EDWIN RIVERA ALVAREZ; CESAR RODRIGUEZ; JESUS M. SERRANO, as Personal Representative of the Estate of XAVIER SERRANO ROSADO; MOHAMMED ISLAM; DAVID JOURDENAIS; RONISE CELESTIN; JOSEPH BRADLEY; BRIAN NUNEZ; CHRISTIAN CARDONA; LIZMARYOOE FINOL VILORIA; YORVIS ROMERO; ORLANDO TORRES; CARMEN NILDA CAPO-QUINONES, as Personal Representative of the Estate of LUIS OCASIO-CAPO; CARLOS ANGLERO; DIGNA ROSA FERNANDEZ DE CARRILLO, as Personal Representative of the Estate of SIMON CARRILLO; DIMARIE RODRIGUEZ LOZADA, as Personal Representative of the Estate of JEAN CARLOS NIEVES; CARLEEN THOMAS; WERNEL E. MARTINEZ; JOSE M. DIAZ UBILES; BERNADETTE CRUZ, as Personal Representative of the Estate of PETER

GONZALEZ-CRUZ; JUAN JOSE CUFIÑO RODRIGUEZ; KEINON CARTER; LEONEL

MELENDEZ; JILLIAN AMADOR; ADRIAN LOPEZ; JAVIER NAVA; and JOAQUIN

ROJAS, by and through their attorneys THE GREGORY LAW FIRM; ROMANUCCI &

BLANDIN, LLC (admission *pro hac vice* pending); and the LAW OFFICES OF CONRAD J.

BENEDETTO (admission *pro hac vice* pending), and for their Complaint at Law against

Defendants, G4S PLC; G4S SECURE SOLUTIONS; and NOOR SALMAN, states as follows:

## PRELIMINARY STATEMENT

2.      On June 12, 2016, Omar Mateen opened fire in Pulse, a nightclub he was allowed

to access while carrying long weapons, in Orlando, Florida.  By the time his rampage ended

more than three hours, later, 49 people were dead, and 53 others were wounded.  It was the

deadliest mass shooting by a single shooter in United States history. This tragedy, an

unfathomable blow to Orlando's LGBT community, was rendered all the more unfortunate by

the high number of ways that it could have- and should have- been prevented, saving the lives of

those killed and rendering unnecessary all of the harm that was caused.

## JURISDICTION

3.      Jurisdiction is conferred upon this Court under 28 U.S.C. §§ 1332, as Defendant

G4S plc is incorporated under the laws of England and has its principal place of business in

Crawley, England.

4.      The amount in controversy in this matter exceeds the sum or value of $75,000.00,

exclusive of interest and costs.

5.      Plaintiffs further invoke this Court's supplemental jurisdiction, pursuant to 28

U.S.C. § 1367(a), over any and all state constitutional and state law claims that are so related to

the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

6.      Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391 (b) and (c) because a significant number of the relevant events occurred within this judicial district and, upon information and belief, various parties to this action reside and/or have significant contacts within this judicial district.

## JURY DEMAND

7.      Plaintiffs demand trial by jury in this action on each and every one of their claims.

## PARTIES

### A.  Plaintiffs

8.      Plaintiff, ANGEL COLON, is a resident of the City of Orlando, Orange County, Florida.

9.      Plaintiff, AMNERIS DIAZ, is a resident of the City of Kissimmee, Osceola County, Florida.

10.      Plaintiff, RODNEY SUMTER, is a resident of the City of Orlando, Orange County, Florida.

11.      Plaintiff, JAY VASQUEZ, is a resident of the City of New Port Richey, Pasco County, Florida.

12.      Plaintiff, MARELYS MENENDEZ, named Personal Representative of the Estate of GILBERTO SILVA MENENDEZ on March 21, 2017, is a resident of the City of Orlando, Orange County, Florida.

13.     Plaintiff, CARLOS MUNIZ-TORRES, is a resident of the City of Orlando, Orange County, Florida.

14.     Plaintiff, MIGUEL VEGA, is a resident of the City of Kissimmee, Osceola County, Florida.

15.     Plaintiff, JONATHAN GARCIA, is a resident of the City of Kissimmee, Osceola County, Florida.

16.     Plaintiff, ESTHER PETERSON, is a resident of the City of New York City, Bronx County, New York.

17.     Plaintiff, MERCEDES MCQUERY, is a resident of the City of Orlando, Orange County, Florida.

18.     Plaintiffs, ROSALIA RAMOS and STANLEY ALMODOVAR, named as Co-Personal Representatives of the Estate of STANLEY ALMODOVAR III on March 21, 2017, are residents of the City of Clermont, Lake County, Florida.

19.     Plaintiff, ROLANDO RODRIGUEZ, is a resident of the City of Orlando, Orange County, Florida.

20.     Plaintiff, DEMITRIUS POLANCO, is a resident of the City of Orlando, Orange County, Florida.

21.     Plaintiff, KADIM RAMOS, is a resident of the City of Orlando, Orange County, Florida.

22.     Plaintiff, JACOBI CEBALLO, is a resident of the City of Oviedo, Seminole County, Florida.

23.     Plaintiff, KALIESHA ANDINO, is a resident of the City of Orlando, Orange County, Florida.

24.     Plaintiff, BETTIE LINDSEY, is a resident of the City of Orlando, Orange County, Florida.

25.     Plaintiff, SANDY ROBERTS, is a resident of the City of Orlando, Orange County, Florida.

26.     KASSANDRA MARQUEZ, is a resident of the City of Deltona, Volusia County, Florida.

27.     Plaintiff, KATHERINE PATRICIO, is a resident of the City of Deltona, Volusia County, Florida.

28.     Plaintiff, SYLVIA SERRANO, is a resident of the City of Deltona, Volusia County, Florida.

29.     Plaintiff, ROSAMARIA FEBO, is a resident of the City of Sanford, Seminole County, Florida.

30.     Plaintiff, NORMAN CASIANO-MOJICA, is a resident of the City of Orlando, Orange County, Florida.

31.     Plaintiff, FRANCHESSKA MERCADO is a resident of the City of Sanford, Seminole County, Florida.

32.     Plaintiff, LEYDIANA PUYARENA, is a resident of the City of Cocoa, Brevard County, Florida.

33.     FELIPE MARRERO SANCHEZ, is a resident of the City of Orlando, Orange County, Florida.

34.     Plaintiff, COREY RIVERA, is a resident of the City of Orlando, Orange County, Florida.

35.     Plaintiff, ILKA REYES, is a resident of the City of Kissimmee, Osceola County, Florida.

36.     Plaintiff, JEANETTE MCCOY, is a resident of the City of Orlando, Orange County, Florida.

37.     Plaintiff, YVENS CARRENARD, is a resident of the City of Orlando, Orange County, Florida.

38.     Plaintiff, EDWIN RIVERA ALVAREZ, is a resident of the City of Orlando, Orange County, Florida.

39.     Plaintiff, CESAR RODRIGUEZ, is a resident of the City of Orlando, Orange County, Florida.

40.     Plaintiff, JESUS M. SERRANO, named Personal Representative of the Estate of XAVIER SERRANO ROSADO on March 21, 2017, is a resident Coto Laurel, Puerto Rico.

41.     Plaintiff, MOHAMMAD ISLAM, is a resident of the City of Oviedo, Seminole County, Florida.

42.     Plaintiff, DAVID JOURDENAIS, is a resident of the City of Oviedo, Seminole County, Florida.

43.     Plaintiff, RONISE CELESTIN, is a resident of the City of Orlando, Orange County, Florida.

44.     Plaintiff, JOSEPH BRADLEY, is a resident of the City of Orlando, Orange County, Florida.

45.     Plaintiff, BRIAN NUNEZ, is a resident of the City of Orlando, Orange County, Florida.

46.     Plaintiff, CHRISTIAN CARDONA, is a resident of the City of Orlando, Orange County, Florida.

47.     Plaintiff, LIZMARYOOE FINOL VILORIA, is a resident of the City of Orlando, Orange County, Florida.

48.     Plaintiff, YORVIS ROMERO, is a resident of the City of Orlando, Orange County, Florida.

49.     Plaintiff, ORLANDO TORRES, is a resident of the City of Orlando, Orange County, Florida.

50.     Plaintiff, CARMEN NILDA CAPO-QUINONES, as Personal Representative of the Estate of LUIS OCASIO-CAPO, is a resident of the City of Kissimme, Osceola County, Florida.

51.     Plaintiff, CARLOS ANGLERO, is a resident of the City of Orlando, Orange County, Florida.

52.     Plaintiff, DIGNA ROSA FERNANDEZ DE CARRILLO, named Personal Representative of the Estate of SIMON CARRILLO on September 8, 2016, is a resident of the City of Orlando, Orange County, Florida.

53.     Plaintiff, DIMARIE RODRIGUEZ LOZADA, named Personal Representative of the Estate of JEAN CARLOS NIEVES on March 20, 2017, is a resident of the City of Kissimmee, Osceola County, Florida.

54.     Plaintiff, BERNADETTE CRUZ, named Personal Representative of the Estate of PETER GONZALEZ-CRUZ on September 12, 2016, is a resident of the City of Orlando, Orange County, Florida.

55.     Plaintiff, CARLEEN THOMAS, is a resident of the City of Orlando, Orange County, Florida.

56.     Plaintiff, WERNEL E. MARTINEZ, is a resident of the City of Orlando, Orange County, Florida.

57.     Plaintiff, JOSE M. DIAZ UBILES, is a resident of the City of Orlando, Orange County, Florida.

58.     Plaintiff, JUAN JOSE CUFIÑO RODRIGUEZ, is a resident of the City of Orlando, Orange County, Florida.

59.     Plaintiff, KEINON CARTER, is a resident of the City of Orlando, Orange County, Florida.

60.     Plaintiff, LEONEL MELENDEZ, is a resident of the City of Orlando, Orange County, Florida.

61.     Plaintiff, JILLIAN AMADOR, is a resident of the City of Kissimmee, Osceola County, Florida.

62.     Plaintiff, ADRIAN LOPEZ, is a resident of the City of Orlando, Orange County, Florida.

63.     Plaintiff, JAVIER NAVA, is a resident of the City of Orlando, Orange County, Florida.

64.     Plaintiff, JOAQUIN ROJAS, is a resident of the City of Kissimmee, Osceola County, Florida.

**B.  <u>Defendants</u>**

65.     G4S PLC is a corporation existing by and under the laws of England, with its principal place of business at 105 Victoria Street, London SW1E 6QT, United Kingdom.

66.     G4S SECURE SOLUTIONS is a corporation existing by and under the laws of

the State of Delaware, with its p*rincipal place of business* at 1395 University Boulevard, Jupiter,

Palm Beach County, Florida, 33458.

67.     Defendant NOOR SALMAN (hereinafter "SALMAN") is a resident of Fort

Pierce, St. Lucie County, Florida.

## FACTUAL BACKGROUND

### A.  Mateen and Noor Salman Plan and Execute the Attack

68.     On June 12, 2016, OMAR MATEEN (hereinafter "MATEEN") approached Pulse

Nightclub (hereafter referred to as "Pulse"), armed with a SIG Sauer MCX semi-automatic

rifle and a 9mm Glock 17 semi-automatic pistol.

69.      MATEEN was able to enter Pulse shortly after 2:00 a.m., and opened fire on the

patrons inside, including many of the Plaintiffs herein.

70.     While within Pulse on his shooting spree, MATEEN was subsequently engaged

by police officers, after a period of time had elapsed, and retreated further into Pulse, holding a

number of patrons hostage in the Pulse restroom. Police officers then exited Pulse, and didn't

return inside Pulse until approximately three (3) hours later, after an extended period that

allowed MATEEN to proceed with endangering the lives of patrons, including many of the

Plaintiffs herein.

71.     During this time, MATEEN made repeated claims to hostages and victims that he

"wouldn't stop his assault until America stopped bombing his country" and that he had explosive

devices and snipers stationed outside Pulse.

72.     MATEEN phoned 911 at approximately 2:22 a.m., praising the Boston Marathon bombers Tamerlan and Dzhokar Tsarnaev, and Moner Mohammad Abu Salha, an American who died in a suicide bombing in Syria in 2014.

73.     MATEEN claimed during a call to hostage negotiators that he had bombs strapped onto his body.

74.     At approximately 4:29 a.m., Mateen told negotiators that he planned to strap explosive vests to four hostages and detonate them.

75.     Upon information and belief, Defendant NOOR SALMAN communicated with MATEEN on more than one occasion during his siege and shooting spree.

76.     By the time MATEEN's was fatally shot by police, ending his rampage, 49 people were dead or dying, and 53 others received permanent injuries and scarring due to wounds from MATEEN's gunfire.

77.     MATEEN's wife, Defendant SALMAN, was arrested by federal officials on January 16, 2017, in connection with her role in the killings and related mayhem.

78.     Upon information and belief, on more than one occasion prior to June 12, 2016, SALMAN observed MATEEN watching violent Islamic State of Iraq and the Levant ("ISIL") recruiting videos in the home.

79.     Upon information and belief, on more than one occasion prior to June 12, 2016, OMAR MATEEN and NOOR SALMAN visited Pulse premises to "scout out" the club, part of the plan of action resulting in the June 12, 2016 mass shootings.

80.     SALMAN was aware MATEEN spent thousands of dollars in the weeks preceding the attack on weapons and ammunition, inclusive of the weapons and ammunition MATEEN used during the June 12, 2016 mass shootings.

81.     Upon information and belief, SALMAN accompanied MATEEN when he purchased ammunition, knowing then and or/prior that MATEEN would use the same as part of the plan of action for the June 12, 2016 mass shootings.

82.     Less than one week prior to the attack, MATEEN asked SALMAN questions including "How bad would it be if a club got attacked?" and "What would make people more upset — an attack on Downtown Disney or a club?"

83.     The day prior to the attack, SALMAN witnessed MATEEN storm out of the house carrying a bag including an assault weapon and ammunition, portending what would ultimately follow.

84.     SALMAN told federal officials that she had known her husband had wanted to carry out a large-scale attack of violence involving the use of weapons against members of the public months, weeks, and/or days before the Pulse nightclub shootings.

**B.   G4S Inadequately Investigates Mateen**

85.     Defendant G4S plc. is the world's largest security company, employing thousands of individuals as armed security guards.

86.     Defendant G4S SECURE SOLUTIONS is an American subsidiary of G4S plc.

87.     Upon information and belief, Defendants G4S PLC and G4S SECURE SOLUTIONS (collectively, "G4S DEFENDANTS") administered a single psychological examination to its hires, including MATEEN, before employing them as armed security guards.

88.     The ostensible purpose of such evaluations was to determine its employees' fitness to carry a firearm in the course of their duties, and includes sections in which a psychologist must attest to the applicant's mental and emotional stability.

89.     In 2009, G4S PLC was made aware of failures in the vetting of its employees when Danny Fitzsimons, a G4S security guard, shot and killed two colleagues after displaying signs of psychological imbalance.  At the time G4S PLC hired Fitzsimons, he had a criminal record and had been accused of assault and firearms offenses. Investigations revealed that G4S PLC had previously received an email from a member of the public expressing concerns over Fitzsimons' mental stability and stating Fitzsimons should not be given a weapon.  Despite being dismissed from a contract in Iraq for punching a client during his employment, and despite Fitzsimons experiencing flashbacks and other symptoms of post-traumatic stress disorder during his employments, G4S PLC continued to employ Fitzsimons.  After the shooting, an English court ruled that G4S PLC had not adequately vetted Fitzsimons, and continued to employ him despite being warned on multiple occasions that Fitzsimons was not fit for duty.

90.     G4S DEFENDANTS hired MATEEN as a security guard on September 10, 2007.

91.     In October of 2006, prior to being hired by G4S DEFENDANTS, MATEEN worked as a recruit for the Florida Department of Corrections.

92.     Following the mass shooting at Virginia Tech in April 2007, MATEEN suggested in a corrections officer training class that he would bring a gun to class. MATEEN was dismissed only days later on April 27, 2007.

93.     Upon information and belief, G4S DEFENDANTS knew of this dismissal, and of Mateen's propensity to carry weapons into unauthorized locations, before employing MATEEN as an armed security guard.

94.     Shortly after his hiring by G4S DEFENDANTS, MATEEN's psychological evaluation was submitted by G4S to the Florida Department of Agriculture and Consumer Services, the state agency responsible for issuing gun permits, to secure approval for MATEEN's firearms licenses.

95.     Upon information and belief, in reliance on such evaluation, The Florida Department of Agriculture and Consumer Services issued MATEEN a Class G firearms license, which allowed MATEEN to carry concealed weapons.

96.     G4S DEFENDANTS represented to the Florida Department of Agriculture and Consumer Services that this psychological assessment was given, reviewed, and signed by one Dr. Carol Nudelman.

97.     In 2013, while working as an armed guard for G4S DEFENDANTS at the St. Lucie Courthouse, MATEEN repeatedly threatened his colleagues, including an instance in which he told a deputy sheriff that he, MATEEN, would have the terror group al-Qaeda kill the coworker's family.

98.     During this time period, MATEEN bragged to a co-worker about being associated with the Boston Marathon bombers.

99.     During this time period, MATEEN told colleagues that he had family connections to al-Qaeda and Hezbollah, and that he hoped law enforcement would raid his home "so he could martyr himself."

100.    During this time period, MATEEN praised Nidal Hasan, the Army major who shot forty-five people at Fort Hood, to his coworkers.

101.    Upon information and belief, these instances were reported to G4S DEFENDANTS' management by other employees.

102.     The St. Lucie County Sheriff's Department reported MATEEN's conduct to G4S DEFENDANTS' management, requested MATEEN's immediate and permanent removal from the St. Lucie County Courthouse, and reported these instances to federal authorities, including the Federal Bureau of Investigation.  As a result, MATEEN was interviewed two times by the FBI.

103.     Upon information and belief, G4S DEFENDANTS knew MATEEN was being investigated by federal law enforcement authorities, including the FBI, prior to the Pulse attack.

104.     Upon information and belief, after learning of the incidents described above, G4S DEFENDANTS declined to administer to MATEEN any new psychological evaluation or assessment to determine whether he was fit for duty, required behavioral intervention, required additional training, or should simply be dismissed, nor did G4S DEFENDANTS suspend MATEEN's ability to carry a weapon, though any of these actions may have resulted in MATEEN's dismissal and/or the revocation of his firearms licensure.

105.     Upon information and belief, G4S DEFENDANTS did not take away MATEEN's service weapon.

106.     Upon information and belief, G4S DEFENDANTS did not recommend to the State of Florida that MATEEN's licensure to carry a weapon as a security guard be retracted.

107.     Defendant G4S DEFENDANTS did not terminate MATEEN, merely transferring him to a different position within the company, all the while allowing him to retain his license to carry firearms.

108.     An official and agent of G4S DEFENDANTS has since stated that this transfer did not occur for disciplinary or precautionary reasons, stating "It's not as if a decision was taken that he was never again going to be given an armed position."

109.    After MATEEN's transfer, Daniel Gilroy, a former police officer and MATEEN's coworker, repeatedly reported to G4S DEFENDANTS that he was concerned with MATEEN's behavior, stating MATEEN was "unhinged and unstable," had "constant anger," went on frequent homophobic and racist rants, and "talked about killing people."

110.    MATEEN's behavior was sufficiently threatening for Gilroy to make repeated requests that G4S transfer Gilroy to a new position.  When G4S DEFENDANTS refused to do so, Gilroy left his position with G4S rather than continue to work alongside MATEEN.

111.    Due to Mateen's repeated threats, G4S DEFENDANTS knew or should have known MATEEN was likely to cause bodily harm to others if not controlled.

112.    Upon information and belief, G4S DEFENDANTS did not administer to MATEEN any new psychological evaluation or assessment.

113.    Upon information and belief, G4S DEFENDANTS did not take away MATEEN's service weapon.

114.    Upon information and belief, G4S DEFENDANTS did not recommend to the State of Florida that MATEEN's licensure to carry a weapon as a security guard be retracted.

115.    Again, G4S DEFENDANTS did not terminate MATEEN.

116.    Prior to the assault, MATEEN purchased a Sig Sauer MCX semiautomatic rifle, a Glock 17 handgun.

117.    The owner of the dealership from which MATEEN purchased the weapons cited MATEEN's security licensures as a reason for his decision to sell MATEEN the weapons.

118.    After the shooting at Pulse Nightclub, Dr. Carol Nudelman claimed in a statement to the media through her attorneys that she had never evaluated or even met MATEEN, had not signed his psychological evaluation, was not living in Florida at the time this psychological

assessment was allegedly taken, and had closed her Florida practice two years prior to the date of MATEEN's alleged evaluation; indeed, she referred to the evaluation submitted by G4S to the State of Florida as a "false document."

119.    Subsequent investigation by the Florida Department of Agriculture and Consumer Services suggested that Nudelman's name was falsely listed on 1,514 forms that G4S submitted between 2006 and 2016; as a result, the Department fined Defendant G4S.

## COUNT I- State Law- Civil Conspiracy
### *(Plaintiffs v. NOOR SALMAN)*

120.    Plaintiffs incorporate paragraphs 1-119 as though fully set forth herein.

121.    At all relevant times, Defendant NOOR SALMAN owed a duty of care to Plaintiffs and Decedents to refrain from conduct which would endanger the safety of others, including Plaintiffs.

122.    Prior to June 12, 2016, Defendant NOOR SALMAN made an agreement with Defendant OMAR MATEEN to commit or aid in the commission of acts, including but not limited to:

      a.   Assault and battery;
      b.   Intentional infliction of emotional distress;
      c.   Homicide; and
      d.   Attempted homicide.

123.    Prior to June 12, 2016, Defendant NOOR SALMAN committed a number of overt acts in furtherance of this conspiracy, including, but not limited to:

      a.   Assisting MATEEN in purchasing firearms and ammunition;
      b.   Assisting MATEEN in conducting surveillance of Pulse Nightclub; and
      c.   Knowingly assisting MATEEN in planning the assault on Pulse Nightclub.

124.    As a proximate result of one or more of these intentional acts or omissions of Defendant OMAR MATEEN, Plaintiffs sustained severe and extreme emotional distress, accrued

extensive expenses, lost and will lose financial gains, were and will be kept from their ordinary

cares and duties, and experienced and will experience mental and physical pain and suffering, all

of which damages are continuing.

WHEREFORE, Plaintiffs demand judgment against Defendant, NOOR SALMAN, for

damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court

deems fair and just.

### COUNT II-State Law- Wrongful Death
*(MARELYS MENENDEZ, as Personal Representative of the Estate of GILBERTO SILVA MENENDEZ; ROSALIA RAMOS and STANLEY ALMODOVAR, as Co-Personal Representatives of the Estate of STANLEY ALMODOVAR III; JESUS M. SERRANO, as Personal Representative of the Estate of XAVIER SERRANO ROSADO; CARMEN NILDA CAPO-QUINONES, as Personal Representative of the Estate of LUIS OCASIO-CAPO; DIGNA ROSA FERNANDEZ DE CARRILLO, as Personal Representative of the Estate of SIMON CARRILLO; DIMARIE RODRIGUEZ LOZADA, as Personal Representative of the Estate of JEAN CARLOS NIEVES; and BERNADETTE CRUZ, as Personal Representative of the Estate of PETER GONZALEZ-CRUZ v. Noor Salman)*

125.    Plaintiff incorporates paragraphs 1-119 as though fully set forth herein.

126.    At all relevant times, Defendant NOOR SALMAN owed a duty of care to Plaintiffs

and Decedents to refrain from negligent and/or willful and wanton conduct which would endanger

the safety of others, including decedents.

127.    Defendant NOOR SALMAN breached the aforementioned duty by committing

negligent and/or willful and wanton acts, including, but not limited to:

   a. Assisting MATEEN in purchasing firearms and ammunition;
   b. Assisting MATEEN in conducting surveillance of Pulse Nightclub; and
   c. Knowingly assisting MATEEN in planning the assault on Pulse Nightclub.

128.    As a direct and proximate result of the misconduct of Defendant NOOR SALMAN,

Decedents died, and Defendant NOOR SALMAN is responsible for their death and damages as

set forth below:

a.   The survivors of GILBERTO SILVA MENENDEZ, STANLEY ALMODOVAR III, XAVIER SERRANO ROSADO, LUIS OCASIO-CAPO, SIMON CARRILLO, JEAN CARLOS NIEVES and PETER GONZALEZ-CRUZ have incurred past and future loss of support and services.

b.   The Estates of GILBERTO SILVA MENENDEZ, STANLEY ALMODOVAR III, XAVIER SERRANO ROSADO, LUIS OCASIO-CAPO, SIMON CARRILLO, JEAN CARLOS NIEVES and PETER GONZALEZ-CRUZ have lost prospective net accumulations and have incurred medical and funeral expenses due to their injuries and death.

WHEREFORE, Plaintiffs, as personal representatives of the estates of Decedents, for the benefit of their Estates and their statutory survivors, demand judgment against DEFENDANT NOOR SALMAN for all damages allowed by law including compensatory damages and costs, and for such other further relief this Court deems appropriate and just.

### COUNT III- State Law- Negligence (Failure to Supervise)
#### (Plaintiffs v. G4S PLC and G4S Secure Solutions)

129.   Plaintiffs incorporate paragraphs 1-119 as though fully set forth herein.

130.   The Defendants, G4S PLC and G4S Secure Solutions, employed and armed security officers, and assisted these officers in obtaining licensures to carry firearms through the State of Florida.

131.   Dr. Carol Nudelman, as an agent of Defendants G4S PLC and G4S Secure Solutions, assisted applicants to G4S PLC and G4S Secure Solutions in obtaining licensures from the State of Florida to carry firearms by conducting mental evaluations of applicants to G4S Defendants and attesting to their mental stability to the State of Florida.

132.     Defendants G4S PLC and G4S Secure Solutions and/or their agents knew or had reason to know that they had the ability to supervise and control MATEEN, and knew or should have known of the necessity and opportunity to exercise such supervision and control.

133.     Defendants G4S PLC and G4S Secure Solutions and/or their agents owed a duty of care to supervise and control MATEEN to prevent him from intentionally harming others, including Plaintiffs, or from conducting himself as to create an unreasonable risk of bodily harm to them.

134.     Defendants G4S PLC and G4S Secure Solutions and/or their agents owed a duty of care to all persons likely to encounter its officers, including Plaintiffs, to ensure that such security officers were properly supervised and vetted and re-evaluated for behavior or psychological problems.

135.     Defendants G4S PLC and G4S Secure Solutions breached the duties owed to persons who encountered its agents, including Plaintiffs, by committing the following acts and/or omissions of negligence:

    a.  Failure to conduct a thorough background check on MATEEN before hiring him;
    b.  Failure to conduct an in-person psychological evaluation on MATEEN before hiring him;
    c.  Failure to conduct an in-person psychological evaluation on MATEEN before attesting to his mental and emotional stability to the State of Florida;
    d.  Failure to conduct more than one evaluation of MATEEN before attesting to his mental and emotional stability to the State of Florida;
    e.  Failure to conduct a sufficient evaluation of MATEEN before attesting to his mental and emotional stability to the State of Florida;
    f.  Approving and/or ratifying documentation submitted to the State of Florida attesting to his stability; and/or
    g.  Failure to withdraw MATEEN's service weapon after threats of violence against coworkers and state officials;
    h.  Failure to recommend to the state of Florida that MATEEN's firearms licensures be withdrawn after MATEEN's threats of violence against coworkers and state officials;
    i.  Failure to recommend or implement a new psychological evaluation on MATEEN after MATEEN's threats of violence against coworkers and state officials;

    j.   Failure to withdraw MATEEN's service weapon during or after the FBI's investigation into his actions;

    k.   Failure to recommend or implement a new psychological evaluation on MATEEN during or after the FBI's investigation into his actions; and

    l.   Falsifying documents with the knowledge that these documents would be relied upon by government officials in their decisions to grant or deny firearm licensure.

    m.  Insufficiently supervising agents conducting psychological reviews of MATEEN;

    n.   Failure to otherwise control MATEEN.

134.    Defendants G4S PLC and G4S Secure Solutions' conduct created a recognizable risk of harm to Plaintiffs.

135.    Plaintiffs were injured and sustained severe personal injury and damages as a direct and proximate result of the Defendants' negligent acts and omissions listed above.

    WHEREFORE, Plaintiffs demand judgment against Defendants, G4S PLC and G4S Secure Solutions, for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

## COUNT IV- State Law- Negligence (Negligent Hiring)
### *(Plaintiffs v. G4S PLC and G4S Secure Solutions)*

136.    Plaintiffs incorporate paragraphs 1-119 as though fully set forth herein.

137.    The Defendants, G4S PLC and G4S Secure Solutions, employed and armed security officers, including MATEEN, and assisted these officers in obtaining licensures to carry firearms through the State of Florida.

138.    The Defendants, G4S PLC and G4S Secure Solutions, were required to make an appropriate investigation of their employees, including MATEEN.

139.    Defendants, G4S PLC and G4S Secure Solutions, knew or should have known that, prior to being hired by Defendants, MATEEN had been dismissed by the Florida Department of Corrections for threats against his training class.

140.    Defendants, G4S PLC and G4S Secure Solutions, knew or should have known of MATEEN's propensity to carry weapons into unauthorized locations, before employing MATEEN as an armed security guard.

141.    Upon information and belief, Defendants G4S PLC and G4S Secure Solutions conducted only one psychological evaluation on MATEEN before employing him as an armed security guard.

142.    An appropriate investigation into MATEEN's background and appropriate psychological screening would have revealed MATEEN's unsuitability for armed security services.

143.    In light of this information they possessed or should have possessed, it was unreasonable for Defendants G4S PLC and G4S Secure Solutions to hire MATEEN as an armed security guard.

144.    Defendants G4S PLC and G4S Secure Solutions and/or their agents owed a duty of care to all persons likely to encounter its officers, including Plaintiffs, to ensure that such armed security officers were properly investigated and/or vetted and behavioral or psychological problems prior to their hiring.

145.    Defendants G4S PLC and G4S Secure Solutions breached the duties owed to persons who encountered its agents, including Plaintiffs, by committing the following acts and/or omissions of negligence:

      a.  Failure to conduct a thorough background check on MATEEN before hiring him;
      b.  Failure to conduct an in-person psychological evaluation on MATEEN before hiring him; and
      c.  Failure to conduct more than one evaluation of MATEEN before hiring him.

146.    Defendants G4S PLC and G4S Secure Solutions' conduct created a recognizable risk of harm to Plaintiffs.

147.     Plaintiffs were injured and sustained severe personal injury and damages as a direct and proximate result of the Defendants' negligent acts and omissions listed above.

WHEREFORE, Plaintiffs demand judgment against Defendants, G4S PLC and G4S Secure Solutions, for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### COUNT V- State Law- Negligence (Negligent Retention)
### *(Plaintiffs v. G4S PLC and G4S Secure Solutions)*

148.     Plaintiffs incorporate paragraphs 1-119 as though fully set forth herein.

149.     The Defendants, G4S PLC and G4S Secure Solutions, employed and armed security officers, including MATEEN, and assisted these officers in obtaining licensures to carry firearms through the State of Florida.

150.     During MATEEN's employment, Defendants G4S PLC and G4S Secure Solutions knew or should have known that Defendant had made violent threats against his coworkers and their families.

151.     During MATEEN's employment, Defendants G4S PLC and G4S Secure Solutions knew or should have known that Defendant indicated personal support for known terrorists and their acts.

152.     During MATEEN's employment, Defendants G4S PLC and G4S Secure Solutions knew or should have known that Defendant indicated that he was associated with known terrorists.

153.     During MATEEN's employment, Defendants G4S PLC and G4S Secure Solutions knew or should have known that Defendant showed repeated signs of mental instability, including, but not limited to, threats to harm others or commit violent acts.

154. Such problems indicated MATEEN's unfitness to serve as an armed security guard.

155. Defendants G4S PLC and G4S Secure Solutions and/or their agents owed a duty of care to take action with regard to employees, including MATEEN, whose behavior indicated unfitness to serve as an armed security guard, to prevent such employees from intentionally harming others, including Plaintiffs, or from conducting himself as to create an unreasonable risk of bodily harm to them.

156. Defendants G4S PLC and G4S Secure Solutions breached the duties owed to persons who encountered its agents, including Plaintiffs, by committing the following acts and/or omissions of negligence:

  a. Failure to conduct a thorough background check on MATEEN after hiring him;
  b. Failure to conduct an in-person psychological evaluation on MATEEN after hiring him;
  c. Failure to conduct an in-person psychological evaluation on MATEEN after attesting to his mental and emotional stability to the State of Florida;
  d. Failure to conduct more than one evaluation of MATEEN after attesting to his mental and emotional stability to the State of Florida;
  e. Failure to withdraw MATEEN's service weapon after threats of violence against coworkers and state officials;
  f. Failure to recommend to the state of Florida that MATEEN's firearms licensure be withdrawn after MATEEN's threats of violence against coworkers and state officials;
  g. Failure to recommend or implement a new psychological evaluation on MATEEN after MATEEN's threats of violence against coworkers and state officials;
  h. Failure to withdraw MATEEN's service weapon during or after the FBI's investigation into his actions;
  i. Failure to recommend or implement a new psychological evaluation on MATEEN during or after the FBI's investigation into his actions; and
  j. Falsifying documents with the knowledge that these documents would be relied upon by government officials in their decisions to grant or deny firearm licensure.
  k. Insufficiently supervising agents conducting psychological reviews of MATEEN;
  l. Otherwise negligently retaining MATEEN.

157. Defendants G4S PLC and G4S Secure Solutions' conduct created a recognizable risk of harm to Plaintiffs.

158.     Plaintiffs were injured and sustained severe personal injury and damages as a direct and proximate result of the Defendants' negligent acts and omissions listed above.

WHEREFORE, Plaintiffs demand judgment against Defendants, G4S PLC and G4S Secure Solutions, for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

**COUNT VI- State Law- Wrongful Death**
***(MARELYS MENENDEZ, as Personal Representative of the Estate of GILBERTO SILVA MENENDEZ; ROSALIA RAMOS and STANLEY ALMODOVAR, as Co-Personal Representatives of the Estate of STANLEY ALMODOVAR III; JESUS M. SERRANO, as Personal Representative of the Estate of XAVIER SERRANO ROSADO; CARMEN NILDA CAPO-QUINONES, as Personal Representative of the Estate of LUIS OCASIO-CAPO; DIGNA ROSA FERNANDEZ DE CARRILLO, as Personal Representative of the Estate of SIMON CARRILLO; DIMARIE RODRIGUEZ LOZADA, as Personal Representative of the Estate of JEAN CARLOS NIEVES; and BERNADETTE CRUZ, as Personal Representative of the Estate of PETER GONZALEZ-CRUZ v. G4S PLC and G4S Secure Solutions)***

159.     Plaintiff incorporates paragraphs 1-119 as though fully set forth herein.

160.     At all relevant times, Defendants G4S PLC and G4S Secure Solutions owed a duty of care to Plaintiffs and Decedents to refrain from negligent and/or willful and wanton conduct which would endanger the safety of others, including decedents.

161.     Defendants G4S PLC and G4S Secure Solutions and/or their agents owed a duty of care to supervise and control MATEEN to prevent him from intentionally harming others, including decedents, or from conducting himself as to create an unreasonable risk of bodily harm to them.

162.     Defendants G4S PLC and G4S Secure Solutions breached the aforementioned duty by committing one or more of the following negligent and/or willful and wanton actions:

    a.   Negligently and/or with utter indifference and conscious disregard, failed to conduct a thorough background check on MATEEN before hiring him;

    b.   Negligently and/or with utter indifference and conscious disregard, failed to conduct an in-person psychological evaluation on MATEEN before hiring him;

c. Negligently and/or with utter indifference and conscious disregard, failed to terminate MATEEN after threats of violence against coworkers and state officials;

d. Negligently and/or with utter indifference and conscious disregard, failed to withdraw MATEEN's service weapon after threats of violence against coworkers and state officials;

e. Negligently and/or with utter indifference and conscious disregard, failed to recommend to the state of Florida that MATEEN's firearms licensures be withdrawn after MATEEN's threats of violence against coworkers and state officials;

f. Negligently and/or with utter indifference and conscious disregard, failed to recommend or implement a new psychological evaluation on MATEEN after MATEEN's threats of violence against coworkers and state officials;

g. With utter indifference and conscious disregard, failed to terminate MATEEN after the FBI's investigation into his actions;

h. Negligently and/or with utter indifference and conscious disregard, failed to withdraw MATEEN's service weapon during or after the FBI's investigation into his actions; and

i. Negligently and/or with utter indifference and conscious disregard, failed to recommend or implement a new psychological evaluation on MATEEN during or after the FBI's investigation into his actions.

163. As a direct and proximate result of the misconduct of Defendants G4S PLC and G4S Secure Solutions, Decedents died, and Defendants G4S PLC and G4S Secure Solutions are responsible for their death and damages as set forth below:

a. The survivors of GILBERTO SILVA MENENDEZ, STANLEY ALMODOVAR III, XAVIER SERRANO ROSADO, LUIS OCASIO-CAPO, SIMON CARRILLO, JEAN CARLOS NIEVES and PETER GONZALEZ-CRUZ have incurred past and future loss of support and services.

a. The Estates of GILBERTO SILVA MENENDEZ, STANLEY ALMODOVAR III, XAVIER SERRANO ROSADO, LUIS OCASIO-CAPO, SIMON CARRILLO, JEAN CARLOS NIEVES and PETER GONZALEZ-CRUZ have lost prospective net accumulations and have incurred medical and funeral expenses due to their injuries and death.

WHEREFORE, Plaintiffs, as personal representatives of the estates of Decedents, for the benefit of her Estates and her statutory survivors, demand judgment against DEFENDANTS G4S PLC and G4S SECURE SOLUTIONS for all damages allowed by law including compensatory damages and costs, and for such other further relief this Court deems appropriate and just.

                                                Respectfully submitted,
                                                THE GREGORY LAW FIRM

                                        By:_____/s Rodney G. Gregory____
                                                One of Plaintiff's Attorneys


Rodney G. Gregory, Esq.
THE GREGORY LAW FIRM
3127 Atlantic Blvd., #3
Jacksonville, FL 32207
Ph: 904-398-0012
Fax: 904-398-5131
Email: service@gregorylawfirm.net
Florida Bar No.: 288561

Antonio M. Romanucci
ROMANUCCI & BLANDIN, LLC
321 North Clark Street, #900
Chicago, Illinois 60654
Ph: 312-253-8600
Fax: 312-253-8601
Email: aromanucci@rblaw.net
*Admission Pro Hac Vice pending*

Conrad J. Benedetto
LAW OFFICES OF CONRAD J. BENEDETTO
1615 S. Broad Street
Philadelphia, Pa. 19148
Ph: 215-389-1900
Fax: 215-271-8910
Email: cjbenedetto@benedettolaw.com
*Admission Pro Hac Vice pending*